# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LAWRENCE BURFITT,

    Plaintiff,

v.

SGT. BEAR, et al.,

    Defendants.

Case No. 1:15-cv-730

Dlott, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I. Background

Plaintiff, presently incarcerated at the Southern Ohio Correctional Facility ("SOCF") and proceeding *pro se*, filed suit in November 2015 against multiple individual Defendants, concerning his conditions of confinement. Plaintiff alleged that he was placed with severely mentally ill inmates for no justifiable reason. He also complained about several incidents in February, March, and May 2015.

Upon initial screening under the Prison Litigation Reform Act of 1995, 28 U.S.C. §1915(e)(2)(B) and §1915A(b), the undersigned determined that Plaintiff had stated an Eighth Amendment claim for excessive force against three defendants: Sgt. Bears, Sgt. Felts,[1] and Sgt. Sammons, concerning two physical altercations that occurred on March 27, 2015 and May 7, 2015. Aside from the Eighth Amendment claims against the referenced three Defendants, the undersigned initially determined that Plaintiff had

---

[1] Plaintiff amended his complaint to correct the spelling of the names of Sgt. Brian Felts and Susan Felts from his original misspelling of "Phelps." (Docs. 19, 20, 25, 26, 27, 29).

stated a "plausible" failure to protect claim against Defendants identified as Ms. Gladman and Ms. Susan Felts. However, the Court later dismissed those two Defendants pursuant to their separately filed motion to dismiss and motion for judgment on the pleadings. (*See* Docs. 52, 59). Because allegations against all other Defendants were dismissed on initial screening, (Docs. 5, 11), the only claims that were permitted to proceed through discovery were the Eighth Amendment claims asserted against Defendants Bear, Sammons, and Felts.

Discovery has now closed and the three remaining Defendants have moved for summary judgment. (Doc. 66). Plaintiff has filed a response in opposition to the motion, to which Defendants have filed a reply. (Docs. 66). The undersigned recommends that summary judgment be partially granted on qualified immunity grounds, but otherwise DENIED.

**II. Analysis**

**A. Summary Judgment Standard and the Record Herein**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents…affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact." This Court must consider the cited materials, but "may" consider other materials in the record. Rule 56(c)(3).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

The crux of this case revolves around who initiated two physical altercations between a shackled inmate and several correctional officers. According to Plaintiff, Defendant Sgt. Bear threw the first punch on March 27, provoked only by Plaintiff's words. Similarly, Plaintiff maintains that Defendant Felts threw the first punch on May 7. Contradicting Plaintiff's account, Sgt. Bear states that he physically engaged Plaintiff on March 27 only after Plaintiff initiated contact by spitting on him. Sgt. Felts similarly asserts that on May 7, Plaintiff initiated physical contact by lunging and attempting to head butt Felts.

In support of their motion for summary judgment in this case, Defendants do not rely upon affidavits, depositions, or other sworn testimony. Instead, Defendants rely

primarily upon other documentary evidence in the record, including institutional reports called "Investigation Summary Report Use of Force" ("UOF reports"), as well as related disciplinary records from the two incidents. The first UOF report consists of 51 pages of documents from the March 27, 2015 incident; the second includes 136 pages from the May 7, 2015 incident. The UOF reports contain unsworn witness statements, incident reports, and related institutional documents. The investigating officers who authored the UOF reports generally credited the officers' statements and discredited the inmate's account, concluding that the force used against Plaintiff on both occasions was reasonable and justified.

In his response in opposition to Defendants' motion, Plaintiff challenges the statements made by Defendants in the UOF reports, arguing that they "lied to investigators to facilitate a purposefully plotted attack against Plaintiff Burfitt." (Doc. 71 at 1). Plaintiff has attached to his response 44 pages of exhibits, the majority of which pertain to unrelated complaints about Plaintiff's mental health treatment rather than the Eighth Amendment claims that remain at issue in this lawsuit. Nevertheless, the undersigned concludes that some genuine issues of material fact remain concerning the events of March 27 and May 7.

### B. Plaintiff's Allegations

The Court begins with a summary of the facts alleged by Plaintiff before turning to the evidence presented by Defendants in favor of summary judgment.

Plaintiff's original complaint alleges that he was placed in a K-4, RTU block for severely mentally ill inmates for no justifiable reason. (Doc. 3 at 5). Plaintiff alleges that, due to excessively noisy inmates on the K-4 block, he had to "act out" in order to

be relocated. *Id.* Apparently in response to Plaintiff's "act[ing] out" on the mental health unit, on March 27, 2015, Plaintiff was transported "in irons" to Sgt. Bear's office to attend a conduct report hearing. The parties agree that they had no prior negative contact or interactions with each other prior to March 27, 2015.

Plaintiff alleges that once he arrived in Sgt. Bear's office, "out of retaliation [for] the Conduct Report," Sgt. Bear began to verbally insult Plaintiff and his mother. (Doc. 3 at 5). Plaintiff alleges in his original and amended complaints that, after Plaintiff verbally responded, Defendant Bear closed his office door and punched Plaintiff "in the face." (Doc. 3; *see also* Doc. 27 at 5).

Defendant Sgt. Brian Felts was present in Bear's office at the time. Plaintiff alleges that Felts assisted Bear "in attacking me." (*Id.*). In his amended complaint, Plaintiff states that since he was bound and shackled at the time, Plaintiff "took my only few defenses," and "kicked and bit" Sgt. Bear, and "spat on" Bear as well. In response, Defendants Bear and Felts allegedly stood Plaintiff up and placed him against a wall by the office door. (Doc. 27 at 5). Plaintiff alleges that "[a]fter they finished Jumping on me, They hit the 'man down' and from there I was taken to a strip cage, then back to my cell." (Doc. 3 at 5; *see also* Doc. 27 at 5).

Plaintiff alleged that other mistreatment occurred between March 27 and May 7, with his water being cut off, dinner trays refused, and missing laundry. However, those allegations were deemed insufficient to state any claim on initial screening. (*See generally* Docs. 5, 11).

On May 7, 2015, Plaintiff alleges that he was again physically assaulted by Defendants Felts and Bear when he appeared for a hearing before the Rules Infraction

5

Board for a "Rule 6" violation that apparently related to a prior incident with Ms. Gladman on the mental health unit. (Doc. 27 at 6). In his original complaint, Plaintiff alleges:

> I was again punched on by Sgt. [Felts], the same person who assisted Bear's attack on 3-27-15. After the board panel found me guilty, Sgt. Sammons cuts the tape off. I assume I was to be placed back in my cell but Sammons orders me to sit down. Sgt. [Felts] opens the office door and calls other officers to "come join the fun." Sammons then nods to [Felts] and he punches me in the face and dares me not to get up. Out of nature and self defense, I get up and attempted to head butt Sgt. [Felts], still while bound by irons, present in the RIB room was Ms. Gladman, representing mental health and Ms. [Felts] a chair member of the RIB panel. Both carelessly watched the attack on me off camera. The man down was hit and others come and applied excessive force on me. Upon being placed back in my cell I was held against the wall outside the block….

(Doc. 3 at 6) (spelling and punctuation errors corrected).

Plaintiff's amended complaint includes similar allegations regarding the May 7, 2015 incident:

> As I was waiting on Gladman to appear [on] behalf of mental health, I watched officers twirl their PR-24 billyclubs while giving me menacing looks. After Ms. Gladman arrives, Brian Felts walks in the interviewing room with us. I'm asked by Gladman "if I knew what was going on," etc. I reply yes and state some of the atrocities I'm taking a stand against. Both respond with no care to the complaints I stated. R.I.B. started and was conducted, upon the end of the hearing "Sammons" cut the tape off. Sgt. Felts opens the door inviting other officers to "join the fun." After returning and shutting the door, Sgt. Felts punched me in the face after "Sammons" gave him a nod of approval. Once knocked from the stool and Felts dared me not to get up; of course I attempted to head butt him rather than use me as his punching bag. From there Sammons is the first to help Sgt. Felts jump on me as Ms. Felts and Gladman just watched these actions take place. Subsequently the man down was hit and others responded. I of course took my defenses by kicking and obtaining and using that dropped PR-24 to my defense. I was escorted back to my cell in J-1 and all while off camera did officers continue hitting me. I was then held against the wall outside of J-1. Then I was sprayed for about 6 seconds by a lieutenant, then shoved in my cell and told to starve.

6

(Doc. 27 at 6, spelling, capitalization, and punctuation errors corrected).

Plaintiff's complaint seeks compensation in the amount of $5,000 against each Defendant for "pain and suffering" as well as punitive damages  (Doc. 3 at 7; Doc. 27 at 7).   He also seeks injunctive relief through an order "cancel[ing] out frivolous fines against me," such as the $147.00 bill for Defendant Bear's emergency medical treatment and another $49 for a shirt Plaintiff was alleged to have spit upon. (*Id.*)

### C. Defendant's Motion

Defendants argue that no genuine issue of material fact exists, and that they are entitled to judgment as a matter of law based upon the following three arguments: (1) Plaintiff suffered no injuries that can support an Eighth Amendment claim; (2) Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*; and (3) Defendants are entitled to qualified immunity. The first two arguments were previously presented in prior motions and remain unpersuasive on summary judgment.  However, Defendants are entitled to partial summary judgment because they are entitled to qualified immunity on some of the claims made against them.

#### 1. Extent of Injuries Required to Show Eighth Amendment Violation

Defendants' first argument is that Plaintiff's claims must be dismissed based upon Plaintiff's failure to demonstrate more than a "*de minimis*" physical injury. Defendants made the same argument in their prior motions to dismiss and for judgment as a matter of law, which was previously rejected by this Court.  Re-examining the argument through the new lens of summary judgment, the undersigned remains unpersuaded.

An Eighth Amendment claim requires a prisoner to satisfy both an objective

7

component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(citations omitted). The Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove the objective component of an Eighth Amendment claim involving cruel and unusual punishment, *see Wilkins v. Gaddy*, 539 U.S. 34, 37 (2010). On the other hand, the extent of injury is one factor to be considered in determining whether the assertion of force "'could plausibly have been thought necessary' in a particular situation." *Id.,* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Thus, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). Ultimately, the critical issue under the Eighth Amendment is not the extent of the injury, but rather, 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Wilkins v. Gaddy*, 559 U.S. at 37 (quoting *Hudson v. McMillian,* 503 U.S. at 7).

In support of their renewed argument that Plaintiff suffered "no" injury sufficient to state the objective component of an Eighth Amendment claim, Defendants rely on the evidentiary support of statements made by Plaintiff included in the two UOF reports. For example, in the March 27 UOF report,[2] Plaintiff wrote a statement that said: "Sgt. Bear called me a bitch and put his hands on me." (Doc. 66-1 at 17, PageID 362). Defendants argue that neither the allegations in the complaint nor the referenced

---

[2]The report is dated April 16, 2015, since it was compiled after the incident. Similarly, the report concerning the May 7 incident is dated July 6, 2015. For the convenience of the Court, the reports are referenced in this R&R by the date of the incident rather than the date on which the report itself was completed.

8

statement reflect <u>any</u> injury sustained by Plaintiff during the March 27 incident.

Similarly, Defendants point to Plaintiff's alleged statement in the May 7 UOF report as proof that no injury was sustained on that date. However, the referenced May 7 UOF report reflects that Plaintiff refused to give any statements to the chief investigating officer. Instead, the lone statement was purportedly recorded by a correctional officer as having been verbally made by Plaintiff within an hour of the incident, but indicates that Plaintiff "refused to sign." (Doc. 66-3 at 52, PageID 459). Regardless, Defendants cite the unsigned "refused" statement to prove the lack of physical injury on May 7. In relevant part, the statement reads: "I'm still standing. Jehovah God is my strength. They sprayed me, Felts punched me, but it didn't hurt. I'm going to kill one of your staff. Ya'll need another '93 Riot. I'm powerful, ya'll can't hurt me. Jehovah is in me." (*Id.*)

This Court may review all evidence of record to determine if a genuine issue of material fact exists. The fact that the documentary evidence relied upon by Defendants for summary judgment in this case consists of unsworn statements would not preclude summary judgment, if that evidence were undisputed and reflected an account consistent with Defendants' version of events. In Defendants' view, Plaintiff was the person who instigated both altercations through physical aggression, and no Defendant inflicted any force sufficient to cause any injury that would support an Eighth Amendment claim. (*See, e.g.,* March 27 UOF report, Doc. 66-1 at 20-21, Sgt Bear's statement denying that he punched or kneed Plaintiff in the face, and asserting that Plaintiff initiated physical contact by spitting on him, that Sgt. Bear physically reacted by taking hold of Plaintiff, at which point Plaintiff kicked Defendant and a scuffle ensued).

9

The difficulty with Defendants' reliance on the UOF reports is that both reports contain evidence that is contrary to Defendants' arguments. For example, attached to Plaintiff's memorandum in opposition to Defendant's motion, and included in the May 7 UOF report, is a Medical Exam Report that reflects objective physical findings that Plaintiff's right eye was "swollen almost shut," with bruising present, fists "red from punching plexiglass," skin "scraped on [left] ankle from shackles," and "scrapes on back of neck," with "chest red from O.C. expos." (Doc. 66-3 at 112, PageID 519; Doc. 721-1 at 6, PageID 689). The assessment reflects "risk for infection related to open areas" and "trauma to eye." (*Id.*)

The March 27 UOF report also includes a more detailed statement provided by Plaintiff to the investigating officer:

> I was in Sgt. Bear's office hearing a ticket for at threat and Sgt. Bear started verbally attacking me, calling me a Stupid Bitch. He also went on to talk negatively about my Mother by calling her a Stupid Bitch. Sgt. Bear then asked me if I was a C1 patient and I told him that was up to Mental Health to decide. He then rose from his chair and punched me in my face and then I ended up on the couch in his office. As I was laying on the couch, Sgt. Bear continued to punch me in my head and face an kneed me in my face by dropping body weight shots on my head with his knees. After doing this Sgt. Bear wrapped his arm around me and I guess he was trying to pick me up off the couch and I then bit his arm trying to get him to stop punching me. I then kicked Sgt. Bear trying to get him away from me. At that point Sgt. Bear acted as though he was going to punch me again so, I spit in his face and said, Fuck You and basically to let him know I was defenseless but, I was not afraid of him.
>
> Q. What prompted your anger while in the Sgt. Office hearing the ticket?
> A. Basically, his trash talking and disrespect about me and my mother.
>
> Q. When and why, did you bite Sgt. Bear?
> A. To defend myself from him punching me in the face and knee striking me in my head.
>
> Q. When you were on the couch in Sgt. Office did you kicik Sgt. Bear and if so, why?

10

> A. Yes. To defend myself from him striking me.
> …
> Q. Did you have any previous negative history with Sgt. Bear?
> A. No. None.

(Doc. 66-1 at 1, PageID 346; *see also* Doc. 66-1 at 18-19, PageID 363-364 (handwritten version of same interview statement, signed by officer and Plaintiff)).

Similar to the May 7 UOF report, the March 27 UOF report includes a copy of a Medical Exam Report that documents injuries from the March incident to Plaintiff's face. The document reflects objective findings of "bloody nose, [right] side of forehead, with abrasion, [right] eyebrow area with abrasion. Lips bloody. Patient hard to assess R/T erratic behavior – jumping around in strip cage, yelling, making aggressive noises." (*Id.*, Doc. 66-1 at 39, at PageID 384). Plaintiff has attached a copy of the same record to his memorandum in opposition to summary judgment. (Doc. 71-1 at 3, PageID 195).

Video evidence does not resolve the issue of whether it was Plaintiff or one of the Defendants who initiated physical contact on either date. There was no recording of the events that took place in Sgt. Bear's office on March 27. Although the May 7 UOF report refers to the officers' accounts being "consistent with the DVR recordings," (Doc. 66-3 at 25, PageID 432), the only video evidence filed in this Court does not show any portion of the altercation in the RIB room.[3]

Plaintiff was later found guilty of institutional Rule violations by the institutional Rules Infraction Board for his conduct on March 27 and May 7. The RIB form, signed by Chairperson Sammons (a named Defendant herein) concluded that on March 27, "Burfitt did kick Sgt. Bear in the right knee, spit in his face, and bite him on his left arm."

---

[3] *See also* Doc. 66-4 at 7, PageID 550 (stating "The I/M also can be seen on camera kicking Sgt. Bear in the left leg."

(Doc. 66-2 at 6, PageID 402). Similarly, a later RIB panel concluded that on May 7, "Burfitt did attempt to cause serious physical harm to staff, while the I/M was refusing orders and resisting the staff. The I/M kicked C/O Shaw once in the stomach and once in the right knee. …The I/M also can be seen on camera kicking Sgt. Bear in the left leg. During the incident the I/M also gained control of a responding staff member[']s PR-24." (Doc 66-4 at 7; PageID 550). However, for the reasons discussed below, the fact that the two RIB panels concluded that Plaintiff violated institutional rules is not dispositive of the Eighth Amendment claims in this case. The undersigned also notes that Plaintiff refused to attend either of the RIB hearings where he was found guilty of the charged offenses. (Doc. 66-2). In an appeal of his convictions (which was denied), Plaintiff reiterated his allegations that Defendant Bear shut his office door and instigated the physical assault against him. (Doc. 66-2 at 9, PageID 405).

Defendants generally argue on summary judgment that "since the Complaint claimed no injury whatsoever, Plaintiff's excessive use of force claims against the Defendants should be dismissed." As reflected above, the only evidence cited by Defendants in support of their "no injury" argument is select portions of the UOF reports, which are contradicted by other portions of the record.

Defendants previously made the same argument, including citation to the same case law. The Court's prior analysis remains applicable:

> In both the motion to dismiss the amended complaint and the motion for judgment on the pleadings, Defendants argue that all claims must be dismissed because Plaintiff does not sufficiently allege a physical injury to recover monetary damages under the PLRA. Defendants contend that although the physical injury need not be significant, it must be more than "*de minimis*" in order to state an Eighth Amendment claim. Defendants claim that Plaintiff alleges no real injuries as a result of the alleged violence against him on either March 27 or May 7, 2015.

12

The cases cited by Defendants for this legal proposition are unpublished and/or from other jurisdictions. Virtually all of the cited cases involve the entirely different standard of review applicable to a motion for summary judgment, as opposed to a motion directed to the pleadings. *See, e.g., Masterson v. Grant*, 2011 U.S. Dist. LEXIS 6974 (E.D. Va. 2011); *Palmer v. Abdalla*, Case No. 2:11-cv-503, 2012 WL 4473206 (S.D. Ohio Sept. 4, 2012). Defendants chiefly rely on *Jarriett v. Wilson*, 162 Fed. Appx. 394 (6th Cir. July 7, 2005), an unpublished case decided prior to controlling Supreme Court case law that undermine the express language on which Defendants rely. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (reversing dismissal of complaint for failure to state a claim based upon "de minimis injury," holding that the "'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (internal citations omitted)). In published cases decided after *Jarriett*, the Sixth Circuit has reiterated that an "absence of serious injury is … relevant to the Eighth Amendment inquiry, but does not end it." *Lockett v. Suardini,* 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Hudson v. McMillian*, 503 U.S. at 7 (1992).

Even assuming that the proposition on which Defendants rely - that a prisoner must allege more than "de minimis" injury in his complaint to state an Eighth Amendment claim – remains good law – Plaintiff alleges that he was punched in the face on two separate occasions without provocation, and that he suffered bruised and swollen eye(s), a bloody nose, and cuts. Although not every detail is contained in the complaint, the alleged injuries are supported in part by the Medical Exam Reports attached to Defendants' Answer, which reflect physical findings on March 27, 2015 of a "bloody nose, R side of forehead with abrasion, L eyebrow area with abrasion. Lips bloody" and similar injuries on May 7. (Doc. 36-1 at 3, PageID 195, *see also id*. at 10, PageID 202).

(Doc. 52, R&R at 3-5) (footnote omitted) Defendants filed no objection to that R&R, which was adopted as the opinion of this Court on September 16, 2016. (Doc. 59).

**2. Whether Underlying Disciplinary Convictions Preclude Plaintiff's Claims**

Defendants' second argument in favor of summary judgment also repeats an argument made in prior motions. Specifically, Defendants argue that because Plaintiff was found guilty of rules violations by the Rules Infraction Board regarding his conduct of both March 27, 2015 and on May 7, 2015, he cannot "collaterally attack the hearing's

13

validity or the conduct underlying the disciplinary conviction if to do so could impact the length of the prisoner's sentence." (Doc. 66 at 8, PageID 341, internal citations omitted).

Again, this Court's prior analysis bears repeating:

Defendants argue that because Plaintiff's RIB convictions "can [theoretically] be considered by the Ohio Adult Parole Authority … when determining whether to continue Plaintiff for parole after twenty-five years, any allegations to the contrary would present a direct challenge to the validity of Plaintiff's disciplinary convictions, thereby impacting the duration of his confinement under Ohio law." (Doc. 43 at 9, PageID 237).

For a variety of reasons…the undersigned cannot agree. The Sixth Circuit has explained in published case law the distinction between an Eighth Amendment claim similar to that brought by Plaintiff herein, and the holding of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), in which the Supreme Court held that unless a prisoner's conviction or sentence were previously set aside by a separate action, a prisoner-plaintiff is foreclosed from bringing a §1983 action that would "necessarily invalidate" his underlying conviction or sentence.

> [Defendant] initially argued that *Heck* bars both Lockett's First Amendment free-speech claim and his Eighth Amendment excessive-force claim, but later conceded at oral argument that his Eighth Amendment excessive-force claim is *not* barred by *Heck* because Lockett's disruptive and threatening behavior upon leaving the hearing room would not justify the allegedly excessive force that Lockett was subjected to, even if Lockett was in fact guilty of assault. *See Huey v. Stine,* 230 F.3d 226, 230 (6th Cir.2000) ("In general, the federal courts hold that Eighth Amendment claims do not run afoul of *Heck* because the question of the degree of force used by a police or corrections officer is analytically distinct from the question whether the plaintiff violated the law." (citing *Nelson v. Jashurek,* 109 F.3d 142, 145-46 (3d Cir.1997) (noting that "it is possible for a finding that [the defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him"))), *abrogated on other grounds by Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2000). The same reasoning applies to Lockett's claim that the nurses were deliberately indifferent to his injuries. That claim could hypothetically succeed, regardless of whether the nurses knew of the altercation or Lockett's comment to the hearing officer, and notwithstanding Lockett's actual guilt in assaulting the RUOs.

> *Lockett v. Suardini*, 526 F.3d at 873.  The handful of unpublished cases cited by Defendants are distinguishable, and do not stand for the proposition that *Heck* bars all Eighth Amendment claims whenever an inmate has been convicted of related disciplinary infractions.  *See also Mitchell v. Craft*, 2015 WL 4743045 (S.D. Ohio Aug. 10, 2015) (denying summary judgment, rejecting Defendants argument that *Heck* would necessarily invalidate the plaintiff's underlying disciplinary convictions).

(Doc. 52 at 5-6, PageID 274-275) (internal footnote omitted).

The Defendants have failed to provide the undersigned with any additional citations to the record or legal authority that would undermine this prior analysis.  To the contrary, other cases more recently decided in this district underscore that the doctrine of *Heck v. Humphrey* very rarely would bar Eighth Amendment claims related to prison disciplinary convictions, and only under circumstances not present here.  *See, e.g., Pullen v. Howard*, Case No. 2:14-ccv-104, 2016 WL 4764894 (S.D.Ohio Sept. 13, 2016), R&R adopted by Judge Sargus on January 3, 2017; *Clark v. Burke*, Case No. 1:16-cv-547, 2017 WL 397407 (S.D. Ohio Jan. 10, 2017), R&R adopted by Judge Black on Jan. 27, 2017.

### 3.  Qualified Immunity

In their last argument in favor of summary judgment, Defendants assert that they are entitled to qualified immunity on claims filed against them in their individual capacities.[4]

The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for

---

[4] The Court assumes, based on the course of proceedings, that Plaintiff has sued Defendants solely in their individual capacities.  Neither Defendants' prior motions nor the current motion discuss any perceived claims against the Defendants in their official capacities.  To the extent that Plaintiff intended to sue Defendants in their official capacities, his claims for monetary damages would be barred by the Eleventh Amendment.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989*); Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

15

damages." See Anderson v. Creighton, 483 U.S. 635, 646 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id.* Here, Plaintiff has made no claim that any Defendant was acting outside his authority.

Defendants argue that they are entitled to qualified immunity because "the facts of the case objectively establish not only that Plaintiff attacked the Defendants, but also that the force that was used was thought necessary to bring Plaintiff under control." (Doc. 66 at 10). The undersigned fully agrees that the force used against Plaintiff <u>after</u> the physical altercations began on both March 27, 2015 and on May 7, 2015 was objectively "reasonable" to regain control of Plaintiff, under the totality of the circumstances. Plaintiff suffered no serious injuries, and admits that he physically fought against and resisted the officers on both occasions.

16

However, for the reasons expressed above, the undersigned finds a genuine issue of material fact exists concerning whether Plaintiff or one of the Defendants was the aggressor in initiating the altercation on both occasions. There is no sworn testimony, and this Court cannot weigh the disagreements in the evidence that has been submitted. Thus, the undersigned cannot determine that the officers' statements should be credited over the Plaintiff's contrary story that Sgt. Bear initiated the conflict by reactively punching Plaintiff in the face on March 27, in response to a verbal provocation.[5] Plaintiff's documented black eye and similar facial injuries are equally consistent with Plaintiff's version of events as they are with Sgt. Bear's statement (and the UOF report's conclusion) that the altercation began after Plaintiff first spat at Sgt. Bear. For similar reasons, an issue of fact remains concerning whether Defendant Felts first punched Plaintiff in an unprovoked attack at the conclusion of the RIB hearing, or whether Plaintiff initiated that second physical altercation as well. Nevertheless, the undersigned concludes that Defendants are entitled to partial summary judgment on the issue of qualified immunity based upon certain undisputed facts.

It is undisputed, for example, that Felts assisted Sgt. Bear on March 27 only after Sgt. Bear and Plaintiff were already engaged in a physical altercation in which Plaintiff admits he was actively resisting. Although Plaintiff characterizes his own actions as entirely defensive, Defendant Felts is entitled to qualified immunity to the extent a reasonable officer would take physical action to regain control of the inmate under the circumstances. The fact that a dispute remains as to whether Defendant Bear initiated

---

[5]Defendants point out that Plaintiff is serving a twenty-five (25) year to life sentence for aggravated murder, and has some history of mental health treatment. However, for the same reasons that this Court may not make credibility determinations in favor of correctional officers on summary judgment, neither will this Court take into account Plaintiff's criminal history or prior mental health treatment.

17

the incident by punching Plaintiff on March 27 does not alter the analysis of Defendant Felts' entitlement to qualified immunity for that incident.

Similarly, Defendant Bear is entitled to qualified immunity for his actions on May 7 after the altercation began. In that incident, Plaintiff alleges that Defendant Felts aggressively threw the first punch. However, once the altercation began on May 7, the record does not reflect more force than necessary was used by any of the three Defendants, in light of the fluidity of the conflict and Plaintiff's admitted active physical resistance. Nor are Plaintiff's physical injuries consistent with the excessive use of force under those circumstances. Therefore, other than the initial blow(s) allegedly struck by Defendant Felts, Defendants are entitled to qualified immunity for any force used in restoring order after the first moments of the May 7 altercation, because the force employed by the Defendants and other responding officers was objectively reasonable under the Eighth Amendment.[6]

With respect to the May 7 incident, the undersigned additionally recommends that qualified immunity be granted to Defendant Sammons on the sole "failure to protect" claim alleged against him. Sammons is not alleged to have taken any physical action against Plaintiff on that day. As the undersigned previously noted in the context of Defendant's motion to dismiss that claim, the issue as to whether Plaintiff had adequately stated any claim against Sammons remained "close" based upon the "minimal allegations" against that Defendant.

---

[6] Plaintiff argues in his response in opposition to summary judgment that although the May 7 UOF report reflects several officers' statements that Plaintiff was aggressively attempting to spit a "mouthful of blood" at them during the course of the altercation, Plaintiff was wearing a "spit mask." In the limited video available, Plaintiff's face appears to be covered or veiled with some type of cloth or mask, but that fact is not inconsistent with Plaintiff attempting to spit, and does not preclude summary judgment to the named Defendants for the reasons stated.

18

Now, after review of the <u>full</u> record including the statements by Sammons and other officers in the May 7 UOF report, the undersigned concludes that no reasonable jury could find that Defendant Sammons' alleged "nod" toward Felts, prior to Felts' alleged action of punching Plaintiff, amounts to a violation of the Eighth Amendment. Sammons is alleged to have assisted Defendant Felts in "jumping" on Plaintiff, but only after the incident was underway and Plaintiff was actively resisting, and therefore is also entitled to judgment on qualified immunity grounds for that alleged conduct.

### III. Conclusion and Recommendation

For all the reasons discussed herein, **IT IS RECOMMENDED THAT:** Defendant's motion for summary judgment (Doc. 66) be **GRANTED only in part** on qualified immunity grounds for certain claims, and in whole as to Defendant Sammons. However, **IT IS FURTHER RECOMMENDED THAT** the motion be denied to Defendant Bear for the March 27, 2015 incident, and denied to Defendant Felts for the May 7, 2015 incident, based upon genuine issues of material fact concerning whether Plaintiff or Defendants initiated the physical altercations on those dates.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LAWRENCE BURFITT,                      Case No. 1:15-cv-730

    Plaintiff,                                 Dlott, J.
                                         Bowman, M.J.
    v.

SGT. BEAR, et al.,

    Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).